UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUSA YANG,<br><br>        Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>        Defendant. | **1:16-cv-1195 GSA**<br><br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF SOUSA YANG AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY** |

**I.    INTRODUCTION**

Plaintiff Sousa Yang ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill in now the acting Commissioner of Social Security.

1

the Honorable Gary S. Austin, United States Magistrate Judge.[2] (*See,* Docs. 21, 23, and 24). Upon a review of the entire record, the Court finds that the ALJ did not apply the proper standards and the decision is not supported by substantial evidence. Accordingly, the Court GRANTS Plaintiff's appeal.

## II.    FACTS AND PRIOR PROCEEDINGS[3]

### A.  Background

On January 22, 2013, Plaintiff filed an application for SSI claiming disability beginning February 28, 2008. AR 13; 43. The parties agree that the Plaintiff properly exhausted her administrative remedies and that the Appeals Council denied Plaintiff's appeal. (Doc. 21, pg. 2 and Doc. 23, pgs. 2-3). Therefore, this appeal is a review of Administrative Law Judge Vincent Misenti's ("ALJ") decision issued on July 30, 2015, which is considered the Commissioner's final order. *See*, 42 U.S.C. §§ 405(g), 1383(c)(3). AR 10-21. Plaintiff is challenging the ALJ's failure to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").

### B.  The Disability Standard

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge.  (*See* Docs. 9 and 10).

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 416.920(a)-(f).

**C.      Summary of the ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 10-21. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 22, 2013, the application date. AR 15. Further, the ALJ identified an affective disorder as a severe impairment. AR 15. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 C.F.R. Part 404 P, Appendix 1. AR 16-17.

The ALJ also determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

> She does not speak English. She is limited to simple, routine, and repetitive tasks. She is not able to perform at a production rate pace, but can perform goal-oriented work. She is limited to simple work-related decisions. She can occasionally interact with coworkers and the public.

AR 17.

When making the finding that Plaintiff was not able to communicate in English, the ALJ stated that the Plaintiff " … is considered in the same way as an individual who is illiterate in English." [4] AR 20. At step four, the ALJ relied on the VE's testimony and found that Plaintiff had no past relevant work. AR 20. However, at step five, he found that Plaintiff was capable of performing work as a cleaner II (DOT 919.687-014), and as an industrial cleaner (DOT 381.687-018). AR 20. Accordingly, the ALJ found that Plaintiff was not disabled. AR 21.

### III. **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

///

---

[4] Plaintiff's native language is Hmong and she had an interpreter at the administrative hearing before the ALJ. AR 13, 286.

# IV. THE ISSUE PRESENTED

Plaintiff argues that the ALJ committed legal error by failing to resolve a conflict between the ALJ's findings that she had no English skills and the VE's testimony that Plaintiff could perform the jobs listed above. Specifically, she contends that the "General Educational Development" category of the DOT indicates that the two jobs identified by the VE (a cleaner II and cleaner, industrial) require a language level of one and two respectively. Language level one requires the ability to recognize the meaning of 2,500 two or three-syllable words; read at a rate of 95-120 words per minute; write simple sentences containing a subject, verb, and object, as well as a series of numbers. She also asserts that language level two requires even more English proficiency. Given these language requirements, the ALJ did not properly address the conflict between the VE's testimony and his language findings. Thus, he incorrectly concluded that Plaintiff could work as a cleaner II and an industrial cleaner, without obtaining additional clarification from the VE. (Doc. 21, pgs.12-15; Doc. pg. 5-7, Doc. 24, pgs. 2-8).

Defendant argues that Plaintiff misunderstands how the DOT's General Education Development corresponds to step five of the disability process. Specifically, the Commissioner contends that it would be improper to require that an ALJ rely on information in the DOT that contradicts the Commissioner's regulatory framework. On one hand, the DOT's General Educational Development describes education generally and not only includes formalized education, but also includes education received from experience and self-study. As part of this paradigm, the DOT presumes that every job mandates that a person has some ability to read and write. On the other hand, the five-step process considers *all* vocational factors. These factors include an individual's RFC, educational levels, an ability to perform work despite any mental or physical impairment, as well as a person's English language skills. Under the Commissioner's regulations, illiteracy, or the inability to communicate in English, is not an automatic bar from

performing work at step five of the disability process. As such, the Defendant argues the ALJ properly concluded that Plaintiff could perform the identified jobs despite her English language deficiencies, especially since neither of the DOT job descriptions require that an individual must read, write, or text. Therefore, any conflict was not apparent at the time of the hearing and further questioning of the VE was not required. Moreover, the world of unskilled work (which the ALJ found that Plaintiff was capable of performing) does not require literacy, or even the ability to communicate in English. Finally, the Commissioner argues that Plaintiff waived this issue on appeal because she was represented by an attorney at the hearing who declined the opportunity to pose any questions to the VE on this topic, and consequently, invited the error. AR 307. Thus, there is substantial evidence to support the conclusion that Plaintiff can perform these jobs. (Doc. 23, pgs. 6-12).

### IV. DISCUSSION

#### A. Waiver of Argument

Preliminarily, the Court will address whether Plaintiff waived this argument since this is a threshold issue in this case. Defendant contends that Plaintiff waived her argument because she was represented by counsel at the hearing, yet her attorney failed to direct any questions to the VE about this issue, or any other issue, even after the VE testified that there was no conflict between his testimony and the DOT. AR 306-307. Defendant cites to *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) in which the Ninth Circuit held that, "at least when claimants are represented by counsel, they must raise all issues and evidence at the administrative hearings in order to preserve them on appeal." (Doc. 18, pgs. 5-6). In opposition, the Plaintiff contends that the Commissioner's regulations and the case law require that an ALJ must inquire about apparent conflicts between the VE's testimony and the DOT regardless of whether the Plaintiff raises the issue. Moreover, it is the Commissioner's burden at step five to establish that Plaintiff can

perform work that exists in substantial numbers in the national economy. Because the Defendant bears the burden at the final phase of the disability process, Plaintiff cannot waive the issue or invite error.

After the briefing was completed in this case, the Ninth Circuit published *Shaibi v. Berryhill*, 870 F. 3d 874, 882 (9th Cir. 2017). [5] In *Shaibi*, the Ninth Circuit addressed whether a Plaintiff waived the issue of challenging a VE's testimony at an administrative hearing regarding the number of available jobs when the issue was not raised before the ALJ at the hearing. *Shaibi*, 870 F. 3d at 881. The Court reaffirmed its holding in *Meanel* and held that a Plaintiff waives the issue of challenging the number of available jobs if an attorney does not raise it at the hearing before the ALJ. *Shaibi*, 870 F. 3d at 882. In the decision, however, the Court reiterated the long standing principle that an ALJ is required to resolve an apparent conflict between the VE's testimony and the DOT regardless of whether a claimant raises the conflict before the agency; but that there was no such authority for the premise that the ALJ had to do so when examining the number of jobs available. *Shaibi*, 870 F. 3d at 882. Given the Court's distinction, it appears a Plaintiff need not raise a conflict between the VE's testimony and the DOT regarding functional requirements of job duties (as opposed to only challenging the number of jobs) before the ALJ to preserve the issue. As such, Plaintiff may present this issue for the first time in this Court.

**B. Step Five**

*1. Legal Standard*

If a Plaintiff establishes that he or she is unable to perform his past work at step four, the burden shifts to the Commissioner at step five "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his or her] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *see also* 20 C.F.R. §

---

[5] Neither party supplied supplemental briefing on *Shaibi,* or advised the Court that the Ninth Circuit had issued this decision.

416.920(g). At this stage, the ALJ first assesses a claimant's "residual functional capacity," which is defined as the most that a claimant can do despite "physical and mental limitations" caused by his or her impairments and related symptoms. 20 C.F.R. § 416.945(a)(1). The ALJ then considers potential occupations that the claimant may be able to perform. See 20 C.F.R. § 416.966.

At step five, the ALJ may rely on the DOT and testimony from a VE to assess a claimant's ability to perform certain jobs in light of his or her residual functional capacity. 20 C.F.R. §§ 416.966(e); 416.969; 416.966(d)(1); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). As part of this process, occupational information provided by a VE should generally be consistent with the DOT. SSR 00-04, 2000 WL 1898704, at *2 (Dec. 4, 2000). Furthermore, the ALJ must resolve any apparent conflict between the VE's testimony and the DOT before relying on the VE's testimony in support of a disability determination. *Id*; *Zavalin v. Colvin*, 778 F. 3d 842, 846 (9th Cir. 2015); *Massachi v. Astrue*, 486 F. 3d 1149, 1153-1154 (9th Cir. 2007). When there is an apparent unresolved conflict between the VE and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled. *Massachi*, 486 F. 3d at 1153. Neither the DOT nor the VE testimony automatically "trumps" when there is a conflict. *Id*. The adjudicator must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than on the DOT information. *Id*.

However, not all potential conflicts between a vocational expert's job suitability recommendation and the DOT will be apparent or obvious. *Gutierrez v. Colvin*, 844 F. 3d 804, 808 (9th Cir. 2016). In order for a difference between a VE's testimony and the DOT's listings to be fairly characterized as a conflict, it must be obvious or apparent. *Id*; *Lamear v. Berryhill*, 865

8

F. 3d 1201 (9th Cir. 2017). This means that the testimony must be at odds with the DOT's listing of job requirements that are essential, integral, or expected. *Id*. Where the job itself is a familiar one, less scrutiny by the ALJ is required. *Id*. Thus, an ALJ must ask follow up questions of a vocational expert only when the expert's testimony is either obviously or apparently contrary to the DOT. However, the obligation doesn't extend to unlikely situations or circumstances. *Id*. Thus, the requirement for an ALJ to ask follow up questions to determine if an actual conflict exists, is fact-dependent.

### *2. The Jobs at Issue*

As noted above, to meet her burden at step five, the Commissioner considers information from the DOT. "The DOT describes the requirements for each listed occupation, including the necessary General Educational Development ("GED") levels; that is, 'aspects of education...required of the worker for satisfactory job performance.'" *Zavalin*, 778 F.3d at 846 (quoting DOT, App. C, 1991 WL 688702(4th ed.1991)). The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development. Relevant here are the language development levels which assesses the language abilities needed to perform a job successfully, and range from level one (which requires the least language ability) to level six (which requires the most). DOT App'x C – Components of the Definition Trailer, General Education Development 1991 WL 688702. The cleaner II job requires a level I language skill. Level I language requires the following:

> *Reading*: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>
> *Writing*: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.
>
> *Speaking*: Speak simple sentences, using normal word order, and present and past tenses.
> 1991 WL 688702

The job description of a cleaner II is as follows:

> Cleans interiors and exteriors of transportation vehicles, such as airplanes, automobiles, buses, railroad cars and streetcars. Cleans interior of vehicle, using broom cloth vacuum cleaner, and whisk broom. Cleans windows with water, cleansing compounds, and cloths or chamois. Replenishes sanitary supplies in vehicle compartments. Removes dust, grease, and oil from exterior surfaces of vehicles, using steam-cleaning equipment, or by spraying or washing vehicles using spraying equipment, brush or sponge.
> DOT 919.687-014, 1991 WL 687897

The cleaner, industrial job requires a level II language ability. A language level II requires the following:

> *Reading*: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> *Writing*: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
>
> *Speaking*: Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.
> 1991 WL 688702

The job description for cleaner, industrial is as follows:

> Keeps working areas in production departments of industrial establishment in clean and orderly condition, performing any combination of the following duties: Transports raw materials and semi-finished products or supplies between departments or buildings to supply machine tenders or operators with materials for processing, using hand truck. Arranges boxes, material, and hand trucks or other industrial equipment in neat and orderly manner. Cleans lint, dust, oil, and grease from machines, overhead pipes, and conveyors, using brushes, air hoses, or steam cleaner. Cleans screens and filters. Scrubs processing tanks and vats. Cleans floors, using water hose, and applies floor drier. Picks up reusable scrap for salvage and stores in containers.
> DOT 381.687-018, 1991 WL 673258

When reading the job descriptions and the language level requirements together for each of these jobs, there is an apparent conflict between the ALJ's finding that Plaintiff "is not able to

communicate in English, and is considered in the same way as an individual who is illiterate in English" (AR 20), and the language capabilities required for the jobs. The DOT clearly notes that some language skills are necessary to be successful for these jobs. Moreover, as Plaintiff correctly notes, some language skills may be needed to read cleaning solution instructions, or even to obtain verbal directions on how to operate cleaning machinery.

The Commissioner's argument that the DOT should not trump the Commissioner's five step regulatory process is not persuasive. In fact, comparing the two systems side-by-side underscores that the paradigms indeed have contradictory approaches: the DOT requires language skills for all jobs, while the Commissioner's five step process considers English skills, but the inability to speak or read English does not necessarily preclude an individual's ability to work. Given the fundamental differences in the approaches, the conflict should have been apparent to the judge. The fact that the conflict exists, however, does the necessarily mean that Plaintiff cannot perform the identified jobs; only that the ALJ was required to explore the conflict so that he could independently determine if the explanation given by the VE was reasonable and provided a basis for relying on the VE's testimony rather than on the DOT requirements.

The Court is similarly not persuaded by the Commissioner's argument that the ALJ limited Plaintiff to simple work which does not require that she speak, read, or write English. Here, the ALJ made an additional finding that Plaintiff is not able to communicate in English, separate and apart from the simple work limitation. This finding is supported by Plaintiff's own testimony that she does not know how to read or write, and the fact that she used a Hmong interpreter at the hearing. AR 13; 286-287; 293. Consequently, this factor warrants further consideration that the ALJ did not contemplate when determining what jobs Plaintiff could perform.

In light of the ALJ's failure to resolve the conflict between the VE's testimony and the

English language requirements outlined by the DOT, the ALJ did not apply the proper legal standards in this case and the decision is not supported by substantial evidence. This error is not harmless since no additional jobs were identified. Accordingly, the case must be remanded so that the record can be developed in this area. *Garrison v. Colvin*, 759 F. 3d 995, 1020 (9th Cir. 2014). (A remand with for an award of benefits is only appropriate when the record has been fully developed and further administrative proceedings would serve no useful purpose). On remand, the ALJ shall address the above discussed conflict with the VE. After hearing additional testimony, the ALJ should determine whether the VE's explanation is reasonable and provides a basis for relying on the VE's testimony rather than on the DOT in accordance with SSR 00-04, 2000 WL 1898704 and the other cases outlined in this order. If the VE's explanation is not reasonable, the ALJ may explore the availability of other jobs as appropriate.

### V. **CONCLUSION**

Based on the foregoing, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The case is remanded to the Commissioner consistent with the instructions outlined in this order. The Clerk of this Court is DIRECTED to enter judgment in favor Plaintiff, Sousa Yang and against Nancy A. Berryhill, Commissioner of Social Security, and close this action.

IT IS SO ORDERED.

Dated: **November 28, 2017**            **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE